28 So.3d 784 (2009)
Angela Rene ALVERSON
v.
Benny Wayne ALVERSON.
2080035.
Court of Civil Appeals of Alabama.
July 17, 2009.
*785 George M. Barnett, Guntersville; and Christopher F. Abel, Gadsden, for appellant.
Submitted on appellant's brief only.
THOMAS, Judge.
Angela Rene Alverson ("the mother") and Benny Wayne Alverson ("the father") were divorced in August 2006. By an agreement, which was merged into the parties' divorce judgment, the parties shared joint custody of their two minor children, with the children spending one-half of each week with each parent. In October 2007, the mother filed a petition to modify custody of the children to award her full custody and seeking to have that portion of the divorce judgment addressing the parties' responsibility to pay for certain of the children's expenses construed by the trial court. Although, in her complaint, the mother did not specifically request to be reimbursed for expenses the father had declined to reimburse her, she did make that claim at trial, and we deem that claim to have been tried by the implied consent of the parties. See Rule 15(b), Ala. Rule Civ. P. ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."); Horwitz v. Horwitz, 897 So.2d 337, 343-44 (Ala.Civ.App.2004) (applying Rule 15(b) to determine that the issue of a father's contempt in failing to pay mortgage payments as required by the divorce judgment was tried by the implied consent of the parties). The father answered the mother's complaint and filed a counterclaim also seeking full custody of the children.
The trial court entered a judgment awarding custody of the older child to the father and custody of the younger child to the mother and ordering that the parties equally split the cost of the children's uninsured medical, optical, and dental expenses. The mother filed a postjudgment motion, in which she challenged the trial court's splitting of custody and requested that the trial court order the father to pay one-half of the expenses she claimed she had incurred on behalf of the children. After the trial court denied that motion, the mother appealed.
*786 On appeal, the mother first argues that the trial court erred by splitting the custody of the two children between the parents. She relies on the oft-stated principle that a custody judgment separating siblings is disfavored, absent a showing of compelling reasons for the separation. See Mardis v. Mardis, 660 So.2d 597, 599 (Ala.Civ.App.1995). The mother's second argument on appeal is that the trial court erred when it failed to award her reimbursement for expenses she had incurred on behalf of the children.
The parties have had an acrimonious relationship since the divorce. In fact, despite having had joint custody of the children, the parties do not communicate well, and most communication regarding the children is done through the father's current wife, Amy Alverson ("the stepmother"). The mother testified that she had had no problems communicating with the stepmother; the father admitted that things might improve if he and the mother were to communicate directly.
The older child of the parties, who had just completed the fifth grade at the time of the June 12, 2008, trial of the modification petitions, is doing quite well in school. In fact, the testimony indicated that she was ranked fourth in her class. The younger child, who had completed the third grade at the time of trial, has been diagnosed with juvenile rheumatoid arthritis, which has affected her eyes. She had had four eye surgeries since the parties' divorce. She sees specialists at The Eye Foundation in Birmingham at least once a month and sometimes as often as four times each month. She requires large print school books and is "legally blind." According to the mother, the younger child requires more assistance with her homework; the stepmother also indicated that the younger child required more assistance with her homework, noting, however, that she sometimes resisted doing her homework. The record does not reveal the younger child's grades.
The mother testified that she would assemble a packet with the children's school work and information pertaining to school for the father each week on Wednesday; the father's custodial period was from 4:30 p.m. on Wednesday until 6:00 p.m. on Saturday. The mother complained that the father was not as good about sending the children's homework and school information back to her; however, she did not cite any specific event or homework assignment that the children missed out on or failed to complete as a result of this failure of communication between the parents. The mother further complained that the father assisted the older child with her homework but that the stepmother completed the younger child's homework with her. The stepmother testified that she helped the younger child with her homework, commenting that it took longer to complete the younger child's homework and that she wanted the children to be finished with their homework so that they could enjoy spending time with the father after he returned home from work. Based on some of the stepmother's testimony, however, it appears that the stepmother also assisted the older child with some of her studies during the afternoon hours before the father returned home from work.
The mother complained that the father treated the children differently from one another and that the father favored the older child. The mother cited as specific incidents the father's hosting a birthday party for the older child but not for the younger child and his taking the older child skating while leaving the younger child at a friend's home. The father explained that the younger child had made plans to spend the night with her friend *787 and that he had taken the older child skating simply because he wanted her to have something to do as well. Concerning the birthday party, the testimony is far from clear. Although at one point the father and the stepmother indicated that, in fact, the older child had a birthday party and the younger child had not, other testimony from the stepmother indicated that each child had been given a birthday party and that each child had not been given a birthday party, although it might have been in two separate years. In addition, the stepmother indicated that one of the parties was to be a Halloween party but that, because the younger child's birthday was November 1, the party became both a Halloween and birthday party and that the older child was allowed to invite friends to this party as well.
The mother further complained that the father had not taken an interest in attending the younger child's doctor appointments and that he had not attended school field trips with the younger child although he had attended such trips with the older child. The father and the stepmother both testified that they had communicated to the mother the father's desire to be informed about the younger child's doctor appointments and the desire to attend them, but to no avail. The mother admitted that she had not necessarily informed the father when the appointments were made, but she said that she faulted the father for not asking about the next appointment when the mother informed him of the outcome of the doctor appointments. The father also said that he had indicated his desire to attend field trips with the younger child but that the mother always went on field trips with her.
Based on their agreement, both parties have shared joint custody of the children since the August 2006 divorce. Because the parties shared joint custody of the children, the "best interest" standard and not the standard set out in Ex parte McLendon, 455 So.2d 863 (Ala.1984), applies to the parties' modification petitions. Morgan v. Morgan, 964 So.2d 24, 34 (Ala. Civ.App.2007). However, the parties were still required to prove that there had been a material change in circumstances affecting the welfare and best interest of the children.[1]Davis v. Blackstock, [Ms. 2060017, June 29, 2007] ___ So.3d ___ (Ala.Civ.App.2007); Morgan, 964 So.2d at 34; and Watters v. Watters, 918 So.2d 913, 916 (Ala.Civ.App.2005). As in all custody cases, our review is limited by the constraints of the ore tenus rule, which requires us to give deference to the custody judgment because of the trial court's unique position to both hear and observe the witnesses before it. Ex parte Anonymous, 803 So.2d 542, 546 (Ala.2001) (quoting Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986)).
As noted above, the mother argues that the trial court erred by separating the siblings in the absence of a compelling reason for doing so. Mardis v. Mardis, 660 So.2d at 599. Although we have affirmed custody judgments separating children from one another, we have typically done so only when the evidence yielded a distinct and compelling reason for the separation. See M.W.W. v. B.W., 900 So.2d *788 1230, 1236 (Ala.Civ.App.2004) (affirming a custody judgment separating siblings when the older daughter had been alienated from the father as a result of unproven abuse allegations and the mother's influence and when the mother had begun affecting the younger daughter's relationship with the father); Hepburn v. Hepburn, 659 So.2d 653, 655 (Ala.Civ.App.1995) (affirming the separation of siblings when the mother exhibited an obvious preference for her daughter over her son, considered the son "a brat," and had little concern or affection for the son, and when the daughter had begun belittling and berating the son as a result of the mother's attitude toward him); and Gandy v. Gandy, 370 So.2d 1016, 1018 (Ala.Civ.App.1979) (affirming a judgment awarding custody of the older daughter to the mother and the younger siblings to the father in light of evidence indicating that the older daughter was rebellious, difficult to control, and hostile toward her father and her younger siblings). However, in Mardis, we reversed a judgment separating the siblings because the record did not reveal a compelling reason for separating them. Mardis, 660 So.2d at 599.
In Gandy, this court affirmed a custody judgment separating the parties' three children by awarding the eldest child to the mother and the younger children to the father. Gandy, 370 So.2d at 1018. The testimony at trial indicated that the eldest of the parties' three children "fosters a great deal of hostility toward her father" and that she "on occasion exhibits antagonism toward her younger brother and sister whom she is prone to `pick on.'" Id. at 1017. In our opinion affirming the judgment, we noted first that the trial court had "amply set[] forth the circumstances" supporting the decision to separate the siblings in its judgment; we also noted that the eldest child harbored hostility toward her father and her siblings. Id. at 1018.
We also affirmed a judgment separating two siblings in Hepburn because the record revealed that the mother favored her daughter over her son and had little or no affection or familial relationship with the son. Hepburn, 659 So.2d at 655. The mother had exhibited a marked preference for the daughter, while referring to the son as a "brat"; the record further reflected that the mother had little concern for the son's welfare and demonstrated little affection for him. Id. The mother's preference for the daughter and her attitude toward the son had, in turn, resulted in the daughter's habit of belittling and berating the son, with the approval of the mother. Id. We affirmed the custody judgment, noting that the trial court had "identified compelling reasons" to justify separating the siblings and that it had "concluded that the son's physical and emotional well-being would be best served by allowing the father to have custody of the son." Id.
In the present case, the trial court did not state its reason for separating the siblings. The testimony concerning the children's relationship with each other reveals that the children argue and are jealous of each other, as is typical between siblings. This evidence of sibling bickering does not rise to the level of the acrimonious relationships present in Hepburn or Gandy. Further, the record does not disclose that either the mother or the father has a difficult relationship with either child, like the hostility between father and the eldest child in Gandy, or that either parent favors one child to the detriment of the other, like the mother in Hepburn. In short, we cannot discern the compelling reason behind the trial court's decision to separate the siblings in this particular custody case. We therefore reverse the trial court's judgment as to custody.
*789 The mother's second argument on appeal is that the trial court erred by failing to determine that the father was due to reimburse her for expenses she had incurred on behalf of the children for their "support and maintenance," as required by the divorce judgment. The parties disagreed on what expenses were encompassed by the phrase "support and maintenance," and the father disputed certain expenses for various other reasons, including the mother's failure to include an itemized bill instead of only a canceled check as proof of certain expenses. The trial court rejected the mother's claim in its entirety, without specifying its reasons for doing so. Of course, in the absence of a statute requiring that specific findings of fact be made, a trial court is not required to make any specific factual findings in support of its judgment. See Rule 52(a), Ala. R. Civ. P. As an appellate court, in those cases in which a trial court does not make specific findings of fact, we are required to presume the trial court made those findings that would support its judgment, unless such findings would be unsupported by the evidence in the record on appeal. Ederer v. Ederer, 900 So.2d 427, 428 (Ala.Civ.App. 2004) (citing Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996)).
The mother's argument on appeal is a page-long paragraph in which the mother argues simply that she was due to be reimbursed for all the expenses she claimed because of the language in the divorce judgment. She does not discuss the meaning of the phrase "support and maintenance," and she does not discuss whether each of her claimed expenses falls within that definition; nor does the mother refute the father's argument that some of the expenses were supported not by itemized bills or receipts but only by canceled checks. This court has long noted that Rule 28, Ala. R. App. P., requires an appellant to "present [her] issues `with clarity and without ambiguity'" and to "fully express [her] position on the enumerated issues" in the argument section of her brief. Bishop v. Robinson, 516 So.2d 723, 724 (Ala.Civ.App.1987) (quoting Thoman Eng'rs, Inc. v. McDonald, 57 Ala.App. 287, 290, 328 So.2d 293, 294 (Ala.Civ.App. 1976)). Our supreme court has also required that a fully developed argument be presented in brief, stating that "Rule 28(a)(10) requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party's position. If they do not, the arguments are waived." White Sands Group, L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008) (emphasis added). Notably, in White Sands Group, the supreme court refused to consider an appellant's argument because the appellant had failed to offer any "factual analysis" and instead had relied on an argument that the trial court's judgment was "`nonsensical.'" White Sands Group, 998 So.2d at 1058. The mother's argument, while not quite based solely on the assertion that the trial court's decision was "reversible error," is woefully underdeveloped and contains no factual analysis upon which this court could form a conclusion regarding the trial court's determination that the mother was not due any reimbursement from the father. Thus, we affirm the trial court's judgment insofar as it denied the mother's claim for the reimbursement of expenses.
Based on our review of the record, the trial court lacked a compelling reason to separate the siblings by awarding custody of the younger child to the mother and custody of the older child to the father. We therefore reverse the judgment insofar as it makes that custody award, and we remand the cause for proceedings consistent with this opinion. Because the mother failed to support her argument concerning the reimbursement of expenses with a *790 developed argument containing factual analysis of the issue, see White Sands Group, 998 So.2d at 1058 (citing Rule 28(a)(10)), we affirm the judgment insofar as it fails to order the father to reimburse the mother for the expenses she claimed to have incurred on behalf of the children.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MOORE, J., concurs in part and concurs in the result in part, with writing, which BRYAN, J., joins.
THOMPSON, P.J., and PITTMAN, J., concur in the result, without writings.
MOORE, Judge, concurring in part and concurring in the result in part.
This appeal concerns the issue whether the Marshall Circuit Court ("the trial court") exceeded its discretion in ordering split custody of the two minor children of Angela Rene Alverson ("the mother") and Benny Wayne Alverson ("the father") in a child-custody-modification proceeding.[2] The main opinion reverses that aspect of the judgment concerning custody on the ground that Alabama law authorizes separating siblings based only on compelling reasons, ___ So.3d at ___, and, the main opinion states, "we cannot discern the compelling reason behind the trial court's decision to separate the siblings in this particular custody case." 28 So.3d at 788. I believe the main opinion has reached the correct result, but for the wrong reasons.
Based on my review of Alabama caselaw, I believe the appellate courts have inconsistently treated the question whether a judgment splitting custody of minor children exceeds the discretion of the trial court. In Pettis v. Pettis, 334 So.2d 913 (Ala.Civ.App.1976), this court considered the propriety of a custody award splitting two minor children, with the husband receiving custody of the parties' five-year-old son and the wife receiving custody of the parties' three-year-old daughter. After considering other factors, the court said:
"There is the further consideration of the need of the children to be together. A separation of two such young children should, in the judgment of this court, be permitted only out of extreme necessity. Apparently the court was of the opinion that the wife was a suitable custodian of the girl. We perceive no cause for concluding that she was not an equally suitable custodian for the boy. It has long been an accepted principle in our courts that absent proof of unsuitability, the mother is best suited to have custody of children of tender years. Messer v. Messer, 280 Ala. 395, 194 So.2d 552 [(1967)]."
334 So.2d at 914. Although in Pettis this court held generally that young children should be separated only "out of extreme necessity," notably, it did not cite any controlling legal authority for that proposition. In Gandy v. Gandy, 370 So.2d 1016 (Ala. Civ.App.1979), the court cited only Pettis in holding that siblings may be separated only "in certain extreme circumstances." 370 So.2d at 1018.
Six years after Pettis, in Mobley v. Mobley, 414 So.2d 107 (Ala.Civ.App.1982), the court affirmed a judgment awarding custody of the 17-year-old child of the parties to Mrs. Mobley and awarding custody of the 13-year-old and 7-year-old children to Mr. Mobley, stating, in pertinent part:

*791 "It would serve no useful purpose to discuss in detail the evidence presented relating to the issues presented upon appeal. However, in response to the issue of child custody, we comment that there was an unopposed in camera interview with the children. It is undenied that [Mr. Mobley] did much of the cooking and household chores and spent much time in recreational activities with the children. Though the granting of custody to [Mr. Mobley] of the younger children, including the girl, is a departure from the usual and historic, in view of the testimony it does not appear to be contrary to the best interest of the children. The assertion by [Mrs. Mobley] of the `tender years doctrine' is inappropriate in view of the recent case of Ex parte Devine, 398 So.2d 686 (Ala.1981) [, which struck down the tender-years doctrine as unconstitutional.]"
414 So.2d at 108. In Mobley, the court did not cite Pettis or Gandy or employ any reasoning that siblings can be separated only "out of extreme necessity." Instead, the court simply relied on the "best interests" standard, concluding that the split-custody award could be upheld as being in the best interests of the children involved.
Four years later, in Jensen v. Short, 494 So.2d 90 (Ala.Civ.App.1986), Jensen appealed from a judgment placing her 13-month-old dependent child, Ashley, in the custody of the Shorts, a couple who intended to adopt the child, instead of in a foster home with her 5-year-old half-sisters. The court held that "[t]he overriding consideration in a child custody case is the best interests of the child." 494 So.2d at 91. After reciting numerous factors the trial court must consider in passing on the best interests of the child, the court said:
"Another factor to be given weight in child custody cases is whether siblings should remain together. Although the general rule is that siblings should not be separated in the absence of compelling reasons, this policy is but one factor to be considered in light of the facts and circumstances of each particular case, keeping ever mindful that the paramount question to be decided is what will promote the best interests of the child. M.D. v. B.D., 336 Pa.Super. 298, 485 A.2d 813 (1984); see also, Commonwealth v. Reitz, 193 Pa.Super. 125, 163 A.2d 908 (1960); Wallace v. Wallace, 420 So.2d 1326 (La.Ct.App.1982)."
494 So.2d at 92.
Jensen is the first case in which this court used the language that siblings should be separated only for "compelling reasons." That language arose not from prior Alabama Supreme Court precedent, see § 12-3-16, Ala.Code 1975 (requiring the Court of Civil Appeals to follow decisions of the Alabama Supreme Court), but from Pennsylvania and Louisiana caselaw. In Commonwealth v. Reitz, 193 Pa.Super. 125, 163 A.2d 908 (1960), the Superior Court of Pennsylvania acknowledged that the argument that children of the same family should not be separated "has natural appeal" but that "there is no fixed and invariable rule which applies." 193 Pa.Super. at 129, 163 A.2d at 911. Rather, it said, the trial court should make a fact-dependent inquiry into "every fact, detail and circumstance of the child's life" to determine which custodial arrangement serves the best interests of the child. Id. Later, in M.D. v. B.D., 336 Pa.Super. 298, 485 A.2d 813 (1984), that same court said: "Although the general rule is that siblings should not be separated in the absence of compelling reasons, this policy is but one factor to be considered, together with others, in determining the manner in which a child's best interests will be served." 336 Pa.Super. at 304, 485 A.2d at 816-17. The Louisiana Court of Appeals echoed that *792 sentiment in Wallace v. Wallace, 420 So.2d 1326 (La.Ct.App.1982), when it said:
"The separation of children of a family though sometimes necessary, is a custodial disposition which courts seek to avoid.... But the paramount question to be considered and answered in determining to whom the custody of the child should be granted is: What would serve the best interest of the child?"
420 So.2d at 1328.
In Jensen, this court ultimately affirmed a judgment separating half-siblings. In affirming, the court concluded that the record showed that the trial court had considered the effect of separating the youngest child from her half-siblings and that it had correctly determined that separation would serve the best interests of the youngest child. 494 So.2d at 92. Consistent with Pennsylvania and Louisiana law,[3] the court in Jensen did not rest its decision on proof of "compelling reasons" to separate the children. Plainly, despite its reference to "compelling reasons," Jensen should not be interpreted as requiring siblings to remain together in the absence of "compelling reasons," when Jensen itself did not rely on such circumstances.
In Kennedy v. Kennedy, 517 So.2d 621 (Ala.Civ.App.1987), this court seemed to acknowledge the true holding in Jensen when it affirmed a judgment separating siblings. The court noted its general disinclination to separate minor children through split-custody arrangements, 517 So.2d at 623, but it held that the trial court had sufficient evidence before it from which it could have correctly determined that the oldest child could not live as comfortably with the mother as she could with the father. 517 So.2d at 624. The court in Kennedy did not expressly require any proof of "compelling reasons" to separate the children.
Nevertheless, in Mardis v. Mardis, 660 So.2d 597 (Ala.Civ.App.1995), this court, relying mainly on Jensen, Gandy, and Pettis, held that, "where both parents are fit to exercise custody, we find it extremely important that the trial court consider whether there is a `compelling reason' to separate the siblings." 660 So.2d at 599. Finding no "compelling reason" to separate the siblings, the court reversed a judgment awarding custody of the older child to Mrs. Mardis and awarding custody of the younger child to Mr. Mardis.
In attempting to summarize the law regarding the separation of siblings, the court, in Hepburn v. Hepburn, 659 So.2d 653 (Ala.Civ.App.1995), stated that this court generally disapproves of custody determinations in which siblings are separated. The court then said that such a decision may be justified "[i]f the trial court identifies a compelling reason for the separation." 659 So.2d at 655. However, the court also said that, "[i]n other cases, if a custody determination in which siblings were separated promoted the best interests of the children, this court has affirmed." Id. (citing Gandy; Smith v. Smith, 586 So.2d 916 (Ala.Civ.App.1991); Reuter v. Neese, 586 So.2d 232 (Ala.Civ. App.1991); Kennedy; and Jensen). Hepburn *793 accurately portrayed the confusing state of the law in the 1990s. See Phomsavanh v. Phomsavanh, 666 So.2d 537 (Ala.Civ.App.1995) (in which, although the court stated that compelling reasons must be the basis for separating siblings, it affirmed a judgment awarding custody of the parties' son to Mr. Phomsavanh solely on ground of their close personal relationship); Hannan v. Hannan, 676 So.2d 1340 (Ala.Civ.App.1996) (affirming judgment separating half-siblings based on their more distant relationship and evidence that best interests of children would be served by split-custody arrangement); Bates v. Bates, 678 So.2d 1160 (Ala.Civ. App.1996) (affirming judgment awarding all children to Mrs. Bates when Mr. Bates failed to prove compelling reasons for separating them); and Overturf v. Leverett, 702 So.2d 469 (Ala.Civ.App.1997) (affirming custody-modification judgment separating siblings based on compelling reason that stepfather had abused one child).
More recent cases have only perpetuated the confusion by saying that siblings may be separated only for compelling reasons, see M.W.W. v. B.W., 900 So.2d 1230 (Ala.Civ.App.2004); and Bishop v. Knight, 949 So.2d 160 (Ala.Civ.App.2006), but by affirming judgments separating siblings despite a lack of compelling justification. See Dunn v. Dunn, 972 So.2d 810, 815 (Ala.Civ.App.2007) (affirming judgment separating siblings when Mrs. Dunn's relationship with older child was "damaged and in need of repair," but no such evidence was presented regarding younger child).
Having canvassed the law regarding separation of siblings, I am not convinced that Alabama truly adheres to the notion that siblings may be separated based only on compelling reasons. Rather, it appears to me that siblings may be separated if the trial court concludes, based on sufficient evidence in the record, that the separation will serve the best interests of the children at issue. In making that determination, the trial court should consider the factors traditionally cited by the appellate courts in this state, see Ex parte Devine, 398 So.2d 686, 696-97 (Ala.1981), but it should also consider factors such as the interrelationship of the children, the children's ages, the similarity of interests and activities of the children, whether the children previously resided with the custodial parent, the parents' involvement in the children's upbringing, the parents' emotional stability, the parents' previous lack of cooperation regarding visitation, the children's preference, parental agreement providing for siblings to be together frequently, and the location of the parents' residences. Annotation, Child Custody: Separating Children by Custody Awards to Different Parents-Post-1975 Cases, 67 A.L.R.4th 354 (1989); see also Dronen v. Dronen, 764 N.W.2d 675, 686 (N.D.2009). I believe each case should be decided on its own factual basis and that the decision should ultimately come down to employing that custody arrangement that serves the best interests of all the children involved.
In her brief, although she also argued that the trial court had to identify a compelling reason to separate the children, the mother framed the overarching issue in this case as "whether a custody award in which two siblings are separated one from another is in the minor children's best interests in light of no evidence to support such an order." Based on a consideration of that issue, which I believe properly states the question for our review, I agree that the judgment should be reversed. Because the parties did not seek split custody, or contemplate that the trial court would split custody of the children between them, they did not present any evidence of most of the factors that would support a finding that split custody serves *794 the children's best interests. Most importantly, I find no evidence as to how the bond and interpersonal relationship between the children would be affected by their separation. Without that evidence, the trial court could not reasonably have concluded that separating the children would serve their best interests. For that reason, I believe the custody judgment is due to be reversed.
BRYAN, J., concurs.
NOTES
[1] We note that, based on our review of the record, neither party has demonstrated a material change of circumstances affecting the welfare and best interest of the children in this case. However, because the mother did not argue that the father had not shown a material change of circumstances, we cannot reverse the trial court's custody judgment on that basis. On remand, the trial court will be free to consider, based on the principles stated in this opinion, whether the joint-custody arrangement should be modified and, if so, how it should be modified.
[2] The main opinion concludes that the mother did not properly argue the issue raised in her brief that the trial court erred in failing to order reimbursement of certain expenses the mother claims she had incurred on behalf of the children. After reviewing the one-paragraph argument, which contains no factual analysis of the error allegedly committed by the trial court, I concur in that aspect of the main opinion refusing to consider that issue.
[3] Interestingly, the Pennsylvania Superior Court has since clarified that "the policy of keeping siblings together is only a consideration and not a determinant of custody arrangements." Saintz v. Rinker, 902 A.2d 509, 513 (Pa.Super.Ct.2006). Rather, Pennsylvania law now holds that a trial court may separate siblings if evidence of other factors indicate that separation serves the best interests of the children. Id. (citing Johns v. Cioci, 865 A.2d 931, 943 (Pa.Super.Ct.2004)). Louisiana law similarly now states that a custody order separating children, though not favored, will be affirmed if the evidence shows it is in the best interests of the children. Walker v. Walker, 880 So.2d 956 (La.Ct.App. 2004).